BAY PATH COLLEGE *vs.* BOARD OF ASSESSORS OF
LONGMEADOW.

No. 01-P-1183.

Suffolk. March 11, 2003. - April 18, 2003.

Present: PORADA, KASS, & COHEN, JJ.

*Taxation,* Real estate tax: exemption; educational institution. *Statute,* Construction. *Words,* "Principal location."

The Appellate Tax Board properly concluded that the residence for the athletic director of a college qualified for an exemption from local real estate taxation under G. L. c. 59, § 5, Third (*e*), where the residence was used for the charitable purpose of the college and was contiguous to real estate that was the principal location of the college. [808-810]

APPEAL from a decision of the Appellate Tax Board.

*David J. Martel* (*Rosemary Crowley* with him) for the defendant.

*James F. Martin* for the plaintiff.

KASS, J. Bay Path College (college), a charitable educational institution located in Longmeadow, has a "Main Campus" that consists of a single parcel of land that lies along Longmeadow Street. A college library is across the street. In 1997, the college acquired a twelve-acre parcel of land along Farmlea Road, about one-third of a mile from the Main Campus. On the latter parcel, called the "South Campus," the college established its athletic fields and facilities, including a clubhouse at 45 Farmlea Road and a house at 33 Farmlea Road that is the residence for the athletic director.

The major question that the parties present is whether the residence for the athletic director (locus) qualifies for an exemption from local real estate taxation because it is used for the charitable purpose of the college and is "contiguous to real estate which is the principal location" of the college. G. L.

c. 59, § 5, Third (*e*).[1] The Appellate Tax Board (board) decided that the locus was exempt, and the assessors have appealed. We affirm.

1. *Principal location of the college.* In aid of their position that the locus is not entitled to exempt status, the assessors argue that the Main Campus is the principal location of the college. Even if the South Campus, as the board said in its decision, "is accessible from the Main Campus by an easy walk down residential and scenic Longmeadow Street," the assessors contend that the South Campus must be something other than the principal location; otherwise, they say, the college has two principal locations, which, they submit, is incongruous with the word "principal" in the adjectival sense of "first."[2] We think that an excessively rigid reading of the statutory phrase "principal location."

In *Trustees of Boston Univ.* v. *Assessors of Brookline*, 11 Mass. App. Ct. 325, 327-328 (1981), we remarked that the Legislature left the term "principal location" "undefined in the statute, undoubtedly because of the practical difficulties inherent in fashioning a definition which could be uniformly applied in the Commonwealth's numerous educational institutions, several of which . . . are dispersed throughout large urban areas." A principal location of an educational institution may consist of parcels that do not necessarily abut but are clustered in sufficient proximity so that, from a bird's-eye view, they present a coherent whole. So it was that in *Trustees of Milton Academy* v. *Assessors of Milton*, 391 Mass. 1017, 1018 (1984), the court

---

[1]General Laws c. 59, § 5, Third, exempts from local taxes "real estate owned by . . . a charitable corporation and occupied . . . for the purposes for which it is organized . . . ." To that general exemption, subparagraph (*e*) makes an exception, namely: "Real . . . property of an educational institution coming within the foregoing description of a charitable organization which is occupied or used wholly or principally as residences for officers of such institutions and which is not part of or contiguous to real estate which is the principal location of such institution shall not be exempt."

[2]The observations about accessibility and the easy and scenic quality of the walk were made in testimony before the board by the college's vice-president of finance, but the board, by describing the testimony, appeared to have adopted the description as a finding of fact. It is, of course, better if a finder of fact, such as the board, states the facts it found rather than reciting what witnesses testified.

said that, "There is no requirement that a school's 'principal location' . . . must consist of one integral parcel."

In the *Boston University* case, the board found that the core of the institution lay north of the Massachusetts Turnpike and Commonwealth Avenue (in Boston) in a number of noncontiguous clusters that together constituted the university's principal location. *Trustees of Boston Univ.* v. *Assessors of Brookline, supra* at 327. We decided that the board's resolution of the principal location issue was consistent with the governing statute. The real estate in controversy in that case was an isolated parcel along Carlton Street, Brookline, on which stood a single house, used as the university president's residence. It was located one-third of a mile from the nearest point of the principal location and was separated from it by several public streets, railway tracks, other privately owned parcels of land, and the major barriers of Commonwealth Avenue and the Massachusetts Turnpike. *Id.* at 330. On those facts, we held that the board had established that it lay within the discretion of the board to resolve that the Carlton Street parcel was not part of the principal location of the university and manifestly not contiguous to it, applying the lexical definition of the word "contiguous"; i.e., it did not touch. *Id.* at 327-329.

In the case at bar, the distance of the South Campus from the Main Campus is, similarly, one-third of a mile, but the South Campus, in contrast to the presidential residence in the *Boston University* case, is far from an isolated lot. Rather, the South Campus is a twelve-acre area with playing fields on which the college conducts its athletic program, including intercollegiate and intramural games. In the clubhouse building on the South Campus, the college stores athletic equipment, and student teams meet. There is also, of course, the locus, around which the instant case revolves. In view of the size, relative proximity, and use of the South Campus, the board was warranted in finding that the activity on the South Campus was integral to the activity on the Main Campus, and that the two parcels together constituted the principal location of the college.

2. *Contiguity.* As the locus is located within the perimeter of the South Campus, Bay Path satisfies the requirement of G. L. c. 59, § 5, Third (*e*), that, to secure tax exemption, real property

used for the residence of a college officer must be part of or contiguous to the principal location of the charitable institution.

3. *Purpose of occupancy.* The primary statutory criterion for exemption of real estate from local taxation is that it be occupied for purposes congruent with those for which the charitable institution was organized. See the statutory text set out in note 1, *supra.* Housing faculty and other officers of an academy is such a purpose. See *Trustees of Milton Academy* v. *Assessors of Milton,* 391 Mass. at 1017. It is icing on the cake that a condition of the job of athletic director at the college was for the occupant of that position to reside on the South Campus in the house at 33 Farmlea Road, the locus.

*Order of the Appellate Tax*
*Board affirmed.*